UNITED STATES of America, Appellee,

v.

**Edward Robert LEHMANN, Appellant.**

No. 85–5554.

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1986.

Decided Aug. 21, 1986.

Albert J. Ahern, Jr., Bailey's Crossroads, Va. (Louis Koutoulakos, Varoutsos & Koutoulakos, Arlington, Va., on brief), for appellant.

Kenneth E. Melson, Asst. U.S. Atty., Arlington, Va. (Justin W. Williams, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before WINTER, Chief Judge, and RUSSELL and PHILLIPS, Circuit Judges.

HARRISON L. WINTER, Chief Judge.

Edward R. Lehmann appeals his conviction for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841, contending that the cocaine found on his person was unconstitutionally seized. Because we conclude that the law enforcement authorities had probable cause to arrest Lehmann so that the search of his person and seizure of the drug were incidents of a valid arrest, we affirm.

I.

On June 27, 1985, Lehman arrived at Washington National Airport aboard Eastern Airlines flight number 790 from West Palm Beach, Florida. The flight originated in Miami. Lehmann deplaned wearing a polo shirt, a "Members Only" flight jacket, and a pair of designer jeans. Agent Vogel observed that Lehmann had a bulge above the crotch but below the belt of his pants. Lehmann met someone at the gate and they hurriedly walked out of the terminal together. Vogel testified that while Lehmann talked to his companion and walked toward the airport exit, he was simultaneously "looking around"; once outside the terminal, Lehmann looked back in the direction of Agent Vogel, then joined by Detective Grimes, "no less than three times."

When the couple reached the first airport parking lot, the two officers approached Lehmann and his companion. According to Lehmann's testimony, Vogel politely asked Lehmann if he would answer a few questions. Vogel then produced identification and informed Lehmann that the Drug Enforcement Administration had experienced problems with drug trafficking from the Miami area. Lehmann agreed to answer some questions. During this time, Detective Grimes spoke separately with Lehmann's companion about 15 feet away. Agent Vogel asked for, received, and returned Lehmann's driver's license and one way airline ticket paid for in cash. Vogel told Lehmann that "it was a routine stop."

Vogel then asked for and received permission from Lehmann to search his travel bag. Vogel testified that while searching the bag on the ground at a distance of about two feet from Lehmann, he looked at Lehmann's crotch and observed what appeared to be the "rounded corners" of a package showing through his pants. During this observation, Lehmann pulled down on the bottom of his jacket on several occasions, as if attempting to conceal the bulge. After finding nothing incriminating in the travel bag, Vogel asked Lehmann for permission to pat him down. Lehmann became upset and refused. Vogel than asked Lehmann to accompany him to the F.A.A. police station, stating that he believed Lehmann was hiding something in his pants. According to Lehmann, Vogel responded to his refusal of consent to the pat down by stating: "Well, we can take [care] of this one way or another." Lehmann agreed to accompany Vogel to the station. Vogel arrested Lehmann at the station and a search incident to that arrest revealed a package in Lehmann's crotch containing 320 gross grams of cocaine. The package measured approximately nine and a half inches long, five inches wide and two inches thick.

II.

Lehmann claims that Agent Vogel seized him in violation of the fourth amendment.

The district court ruled that Vogel had probable cause for arrest once he had closely observed the bulge in Lehmann's crotch and that the search and seizure were incident to a valid arrest. We agree.

■ First, we note that Lehmann was not "seized" under the fourth amendment prior to the time that Vogel asked Lehmann to accompany him to the F.A.A. police station. The district court found that the initial stop of Lehmann and the search of his bag were consensual. The record amply supports the conclusion that from Lehmann's perspective, and that of the officers, Lehmann was free to refuse the initial request for questioning and the search of his travel bag. Under *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), and *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), Lehmann's voluntary cooperation with such requests does not, absent coercive circumstances not present here, implicate the fourth amendment.

■ The district court did not specifically state at what point Lehmann was "seized" under the fourth amendment, though the government appears to concede that Vogel effectively seized Lehmann when he asked him to walk to the F.A.A. police station. The government contends, however, that the district court correctly concluded that such a seizure was justified by probable cause. Agent Vogel seized Lehmann only after observing from a distance of about two feet the "rounded corners" of a package in defendant's crotch. In addition, Vogel knew that within the previous six months, law enforcement agents at Washington National Airport had arrested six persons arriving from Florida via Eastern Airlines carrying cocaine concealed in a package in their crotch area. The government argues that the incriminating bulge, combined with the ways in which Lehmann met the drug courier profile, demonstrated the requisite probable cause.

Lehmann argues that our opinion in *United States v. Gooding*, 695 F.2d 78 (4 Cir.1982), controls the present case. *Gooding* held that factors of a drug courier profile—including the defendant's arrival from a "source city" for drugs—were insufficient to provide articulable suspicion to justify an investigative detention. *Id.* at 83. We reasoned that these characteristics of drug couriers applied to a great number of innocent persons, and that the only "particularized" reasons the government offered for stopping the defendant were unsupported by the record. *Id.* at 83–84.

In our opinion, *Gooding* is clearly distinguishable because the size, shape, and location of Lehmann's bulge provided a particularized ground for suspecting him of criminal conduct. Especially at the distance Vogel observed it, the existence of a bulge in Lehmann's crotch area the size of an oversized paperback book, and his attempts to conceal it with his jacket while offering no innocent explanation, were peculiar facts applying to a very narrow group of travellers. When the officer is confronted by particularized evidence of criminal behavior, we then think it appropriate for the officer to consider other probative facts, such as the extent to which a suspect matches a drug courier profile. We permitted reliance on such factors in *United States v. Harrison*, 667 F.2d 1158, 1160 (4 Cir.1982), where the suspect had a four to six inch long bulge on his back under his jacket.

■ Though the issue in *Harrison* was only that of articulable suspicion, we conclude that Agent Vogel had probable cause to arrest Lehmann in the present case where he observed the "rounded corners" of a package beneath Lehmann's pants at a distance of two feet, the package was the size and shape of a large paperback book, Lehmann attempted to conceal the bulge with the bottom of his jacket while offering no innocent explanation, and Lehmann's conduct otherwise fit the *modus operandi* of recent drug couriers who had carried cocaine in their crotch from Florida to Washington National Airport via Eastern Airlines. We believe the combination of these various factors gave Agent Vogel probable cause to believe Lehmann was

carrying contraband goods in his crotch area and justified his arrest. *See Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (plurality opinion).* Once the validity of the arrest is established, the subsequent search of Lehmann's person and seizure of the drug he had concealed were unexceptionable as permissible incidents to a valid arrest. *See Florida v. Roger,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

AFFIRMED.

---

* Lehmann also challenges Agent Vogel's veracity by noting two apparent inconsistencies in his statements. First, Lehmann notes that Vogel did not initially mention the bulge in his affidavit supporting the criminal complaint against Lehmann, but added information regarding the bulge at his second appearance before the magistrate. Second, Lehmann contends that Vogel equivocated on the question of whether Lehmann was free to leave during the encounter. The district court credited Vogel's testimony in making its factual findings. Lehmann hardly demonstrates that the court's findings were "clearly erroneous," and we think they are well supported by the record. The fact that Vogel did not refer to the bulge when he first tendered his affidavit does not vitiate his credibility, since the purpose of the complaint is not to test the validity of the initial search and seizure, but to provide "probable cause to believe that an of-

fense has been committed and that the defendant committed it." Rules 4(a), 5(a), Fed.R. Crim.P. Vogel fulfilled that purpose by stating in the affidavit that the search of Lehmann revealed a quantity of cocaine consistent with an intent to distribute.

Nor do we find that Vogel equivocated as to when Lehmann was free to leave. Vogel stated that he believed he lacked probable cause to arrest Lehmann when he first approached him. Only after he observed the bulge from a close enough distance to see the rounded corners of a package did he feel that he had probable cause and that Lehmann was no longer free to leave. The fact that Vogel did not then immediately arrest Lehmann, and proceeded to request a pat-down search, does not belie this evaluation, but demonstrates the sort of cautious and incremental investigation the fourth amendment is meant to encourage.