852 F.2d 566
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Albert BLANDSHAW, Defendant-Appellant.
 No. 88-5036.
 United States Court of Appeals, Fourth Circuit.
 Submitted: May 31, 1988.
Decided: July 21, 1988.
 
 Timothy John McGary, for appellant.
 Henry E. Hudson, United States Attorney; Bonnie S. Greenberg, Special Assistant United States Attorney, for Appellee.
 Before WIDENER, JAMES DICKSON PHILLIPS and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Albert Blandshaw appeals an order of the district court which denied his motion to suppress cocaine found on his person. Under a conditional plea agreement, Blandshaw pled guilty to possession of cocaine with intent to distribute, but reserved the right to appeal the denial of his suppression motion. We affirm.
 
 
 2
 Blandshaw arrived at Washington National Airport on a plane from New York on October 7, 1987. Although he exhibited no suspicious behavior, Drug Enforcement Administration (DEA) Task Force Detective Floyd A. Johnston and Arlington Police Officer Paul S. Kozich followed Blandshaw as he walked through the terminal building and out onto the sidewalk. Johnston and Kozich then approached Blandshaw. Johnston identified himself as a police officer, showed his credentials and asked if he could speak to Blandshaw for a moment. Blandshaw replied, "Sure."
 
 
 3
 In response to Johnston's questions, Blandshaw said he had just arrived on a flight and showed Johnston his ticket, which was in the name of M. Brown. Blandshaw stated that the name on the ticket was his and that the M stood for Mike. Johnston explained that he was part of the DEA Task Force and that his job was to stop the flow of drugs into and through Washington. He asked Blandshaw whether he was carrying any narcotics; Blandshaw replied that he was not.
 
 
 4
 Johnston requested permission to search Blandshaw, who answered, "Sure, go ahead." During the pat-down search Johnston felt a soft package under Blandshaw's pants below his belt. Johnston reached in and pulled out a sealed clear plastic bag containing a white powder which later field tested positive as cocaine and proved to be 90 percent pure. Blandshaw was then arrested.
 
 
 5
 On appeal, Blandshaw argues, first, that he was seized within the meaning of the Fourth Amendment; second, that the officers had no articulable grounds for suspicion that he was engaged in criminal activity to justify his seizure; and third, that his consent to the search was invalid because of the illegal seizure which preceded it.
 
 
 6
 After hearing the direct testimony and cross-examination of Detective Johnston, the district court concluded that no seizure had taken place. This determination is essentially factual and should be upheld unless clearly erroneous. United States v. Gooding, 695 F.2d 78, 82 (4th Cir.1982). We find no error in this case.
 
 
 7
 As evidence that he was seized within the meaning of the Fourth Amendment, Blandshaw points to the following facts: (1) he was approached by two officers, and told that their job was to stop the flow of narcotics into Washington, (2) he was directly asked whether he was carrying drugs, and (3) he was not told he was free to leave if he chose.
 
 
 8
 A seizure within the meaning of the Fourth Amendment occurs when a person is restrained by physical force or a show of authority so that he reasonably believes his freedom of movement has been curtailed. United States v. Mendenhall, 446 U.S. 544, 553-54 (1980). The Fourth Amendment is not violated when law enforcement agents merely approach an individual in a public place and ask him if he is willing to answer some questions. Florida v. Royer, 460 U.S. 491, 497 (1983). We agree with the district court that the agents did nothing, prior to the discovery of the cocaine, which would have led Blandshaw reasonably to believe that his freedom of movement had been curtailed.
 
 
 9
 In United States v. Mendenhall, 446 U.S. 544, 554-57, (1980), the Supreme Court found that the "threatening presence of several officers" was one factor which might indicate a seizure, but that consent must be determined from the totality of the circumstances. The two officers did not behave in a threatening manner toward Blandshaw, and the mere fact that there were two of them does not convert the encounter into a seizure.
 
 
 10
 Nor does Detective Johnston's question to Blandshaw require a finding that Blandshaw was seized at that moment. Blandshaw cites United States v. Berry, 670 F.2d 583 (5th Cir.1982) in support of his argument. The Fifth Circuit noted in Berry that in determining whether a seizure has occurred, statements by officers that a person is suspected of carrying drugs must be carefully weighed, because "[s]tatements which intimate that an investigation has focused on a specific individual easily could induce a reasonable person to believe that failure to cooperate would lead only to formal detention." Id. at 597. The Fifth Circuit has recently applied Berry to an airport drug case in a highly mechanical way, finding that as soon as the officer told the suspect that he was "working narcotics" and asked to look in her gym bag, a seizure occurred. United States v. Gonzalez, 842 F.2d 748, 752 (5th Cir.1988). Blandshaw urges this Court to do the same. We decline, however, because such an interpretation of the Fourth Amendment would not be in accord with Mendenhall or with our own decision in United States v. Lehmann, 798 F.2d 692 (4th Cir.1986).
 
 
 11
 In Mendenhall, although one of the agents identified himself as a federal narcotics agent and asked the suspect whether she would go with him to the airport DEA office for further questions, the Supreme Court found no seizure because the suspect complied voluntarily; no restraint or compulsion was used. Similarly, in Lehmann, the agent approached a passenger, Lehmann, arriving from Miami, identified himself as being with DEA and said there had been problems with drugs coming from Miami. Lehmann voluntarily showed the agent his ticket and driver's license and permitted a search of his travel bag. This Court found that no seizure took place until Lehmann refused to allow a pat-down search and was asked to accompany the agent to the airport police station. In this case, Blandshaw's freedom was not curtailed in any way until the cocaine was actually discovered.
 
 
 12
 Finally, Johnston's failure to expressly inform Blandshaw that he could leave if he chose, does not convert this encounter into a seizure. Mendenhall, 446 U.S. at 555.
 
 
 13
 Because no seizure occurred, we need not address the issue of whether the officers had reason to suspect Blandshaw of criminal activity or whether an illegal seizure invalidated Blandshaw's consent to the search. The voluntary nature of Blandshaw's consent to be searched is determined by the totality of the circumstances. Mendenhall, 446 U.S. at 557. The evidence in this case amply supports the district court's conclusion that Blandshaw's consent was entirely voluntary.
 
 
 14
 Accordingly, we affirm the district court's order denying Blandshaw's motion to suppress and we affirm his conviction. We dispense with oral argument because the facts and legal arguments are adequately presented in the briefs and record and argument would not significantly aid the decisional process.
 
 
 15
 AFFIRMED.