896 F.2d 547
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Harris DESIRE, Defendant-Appellee.
 No. 89-5648.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Nov. 29, 1989.
Decided: Feb. 5, 1990.
 
 Richard D. Mendelson, Land, Clark, Carroll & Mendelson, PC, on brief, for appellant.
 Henry E. Hudson, United States Attorney; Jerry M. Hermele, Special Assistant United States Attorney; Stephen J. Curran, Third-year Law Student, on brief, for appellee.
 Before DONALD RUSSELL and CHAPMAN, Circuit Judges, and HARRISON L. WINTER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Appellant Harris Desire was arrested at National Airport, in Arlington, Virginia, for possession of narcotics. Appellant entered a conditional plea of guilty to one count of possession with intent to distribute 50 grams or more of a Schedule II controlled substance,[1] in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2, but preserved his rights conferred by Fed.R.Crim.P. 11(a)(2) to appeal the district court's order denying his motion to suppress the seized narcotics which formed the basis for his arrest, prosecution, and conviction. We find no error in the district court's order denying appellant's suppression motion; accordingly, we affirm Desire's conviction.
 
 
 2
 * The facts leading up to appellant's arrest are essentially uncontradicted; rather, appellant disputes the legal characterization to be accorded the facts. We summarize the facts as they were developed before the district court.
 
 
 3
 The United States Drug Enforcement Administration (DEA) had Detective Johnston and Sergeant Grimes assigned to National Airport on April 4, 1989. The officers were part of the DEA's Mass Transportation Detail, seeking to interdict narcotics being transported into the Washington, D.C., area. Shortly before noon, the officers observed appellant entering the terminal from a shuttle flight originating in New York City. Detective Johnston testified that he noticed appellant repeatedly glanced at his abdomen as he proceeded through the terminal and outside to the taxi stands. The detective and Sergeant Grimes--attired in "plain-clothes"--approached appellant outside the terminal, identified themselves as police officers, and asked to speak to appellant for a moment, to which appellant consented.
 
 
 4
 Detective Johnston asked to see appellant's airline ticket. Appellant readily produced his ticket--a one-way ticket from New York City to Washington, paid in cash. Johnston returned the ticket to appellant, then explained that he and Sergeant Grimes were part of the narcotics unit at the airport and asked appellant whether he was carrying any narcotics; appellant replied that he was not. Detective Johnston asked appellant for permission to search his person; appellant consented, stating "Sure. Go ahead."
 
 
 5
 The ensuing search disclosed a "clear plastic bag containing a hard, chunky substance" that the detective recognized as cocaine base, concealed in the area of appellant's abdomen. Appellant was arrested and transported to the police station. He later admitted that he was to be met at the airport by someone who would recognize him and that he was to receive $600 for delivering the drugs.
 
 
 6
 The district court found from these facts that the encounter between appellant and officers Johnston and Grimes was merely a police-citizen encounter--not a Terry[2] stop or a Sokolow[3] detention--in which a police officer, without any show of force and without any threats or other coercive acts, approached a citizen, asked whether he was willing to answer a few questions, to which the citizen assented, asked for identification, asked whether he was carrying narcotics and, in response to a negative reply, asked for and received permission to search his person. The search thus permitted was characterized by the district court as a consent search sanctioned by United States v. Mendenhall, 446 U.S. 544, 553-54 (1980); Florida v. Royer, 460 U.S. 491, 497 (1983), and United States v. Lehmann, 798 F.2d 692, 694 (4th Cir.1986); accordingly, appellant's suppression motion was denied and appellant entered his conditional plea of guilty.
 
 II
 
 7
 A district court's determination that a seizure has or has not occurred is essentially factual and will be upheld unless clearly erroneous. United States v. Gooding, 695 F.2d 78, 82 (4th Cir.1982). We discern no error in the district court's characterization of appellant's encounter with police or its conclusion that appellant freely consented to the search of his person.
 
 
 8
 In United States v. Mendenhall, supra, the Supreme Court stated that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. In the absence of such force or a show of authority which would cause a reasonable person to believe that his freedom of movement had been curtailed, no seizure occurs. Therefore, police do not violate the fourth amendment by merely approaching a person in a public place, asking if the person is willing to answer a few questions, or putting questions to the person. Florida v. Royer, 460 U.S. at 497. Nor would the fact that the policeman identifies himself as a law enforcement officer, without more, convert the encounter into a seizure requiring some level of objective justification. Id. A person approached in this way may legally disregard the questions and simply walk away. Mendenhall, 446 U.S. at 554.
 
 
 9
 The instant inquiry is whether Detective Johnston and Sergeant Grimes said or did anything prior to their discovery of the cocaine base which would, objectively viewed, have caused appellant to believe he was not free to leave if he chose. We find from the record that the officers did not engage in any of the conduct which the Supreme Court in Mendenhall identified as likely to give this impression and thus create a seizure. The officers did not behave in a threatening manner, did not display weapons, did not touch appellant without first securing his permission to search his person, did not ask him to leave the public area in which the encounter originated, and did nothing to indicate that appellant might be forced to comply with their request to speak to him. Quite simply, the officers asked and appellant acquiesced.[4]
 
 
 10
 Appellant claims that subjectively he felt coerced because he is Haitian, was not fluent in English, and had a greater fear of police than would an American. Two points are pertinent: First, the Mendenhall test is objective--whether a reasonable person would have felt free to disregard the officers' presence and depart. Mendenhall, 446 U.S. at 554-55; Royer, 460 U.S. at 502. The fact that appellant was not expressly advised by the officers that he had a right to leave is not significant. Mendenhall, 446 U.S. at 555. Second, the district court determined that appellant was sufficiently fluent in English to understand what was happening at the airport: "He may have had in the past some difficulty with the English language, but he has mastered that well. His English on the [witness] stand was extremely articulate, and he is to be commended for ... mastering English in such a good fashion."
 
 
 11
 In these circumstances, the district court's finding and conclusion that no seizure occurred was correct.
 
 III
 
 12
 We dispense with oral argument because the facts and legal arguments are quite adequately presented in the briefs, joint appendix, and the record, and the decisional process would not be significantly aided by oral argument. Fed.R.App.P. 34(a)(3); Loc.R. 34(a). We affirm the district court's order denying Harris Desire's motion to suppress evidence and we affirm his conviction.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Cocaine base, commonly known as "crack."
 
 
 [2]
 Terry v. Ohio, 392 U.S. 1 (1968)
 
 
 [3]
 United States v. Sokolow, --- U.S. ---- (1989)
 
 
 [4]
 Pursuant to Fed.R.App.P. 28(j) counsel for appellant has alerted the Court to the recent decision in United States v. Blake, 888 F.2d 795 (11th Cir.1989), which affirmed a district court's suppressing a similar consent search occurring at an airport. It was successfully argued to the district court in Blake that a search of one's genitals area, under the circumstances then and there present, exceeded the reasonable scope of the consent granted. Counsel for appellant would have this Court reach the same result. No issue as to the scope of appellant's consent was presented to the trial court in the instant case; thus it may not be raised for the first time at the appellate level