898 F.2d 149
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clarence O. SAMUEL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kelvin SHAW, Defendant-Appellant.
 Nos. 88-5510, 88-5802.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 9, 1989.
Decided: March 5, 1990.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CR-87-235-A)
 Donald Thomas Cheatham, Washington, D.C., for appellants.
 William Graham Otis, Assistant United States Attorney, Alexandria, Va., for appellee. On Brief: Vincent H. Fuller, Alexandria, Va., for appellants. Henry E. Hudson, United States Attorney; Kimberly M. Zimmer, Special Assistant United States Attorney; Laureen A. Buckert, Third Year Law Student; Rosalie C. Patrick, Third Year Law Student, Alexandria, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, Circuit Judge, JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation, and WALTER E. HOFFMAN, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Kelvin Shaw and Clarence O. Samuel contend that the district court erred in denying their motion to suppress evidence which they allege was obtained in violation of their fourth amendment rights. We find no merit to the appellants' argument, and we affirm.
 
 
 2
 Shaw and Samuel were arrested September 3, 1987, at National Airport in Northern Virginia and charged with possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(b)(1)-(A)(ii) and with traveling in interstate commerce to carry out an illegal activity in violation of 18 U.S.C. Sec. 1952. Agent Johnston and Detective Brent, members of the Drug Enforcement Agency Task Force assigned to the airport, observed the two men arrive on an Eastern Airlines shuttle flight from LaGuardia Airport in New York City.
 
 
 3
 According to Johnston's testimony at the suppression hearing, Shaw and Samuel disembarked from the flight together and went into a restroom. The agents, who were in plain clothes and were armed, followed the men. When the men turned to leave the restroom, Agent Johnston identified himself as a member of the DEA Task Force by showing the men his badge and credentials. He asked permission to speak with them, and both consented. Johnston also said neither he nor Agent Brent attempted to block the restroom exit or prevent the men from leaving in any way; nor did the agents at any time during the conversation display their weapons.
 
 
 4
 Shaw and Samuel told Johnston that they were traveling together. They produced tickets, which had been paid for in cash, in the names of K. Shaw and L. George. After the tickets were returned to them, Johnston asked if they had any identification. Shaw produced a photo ID from New York, which was returned. Johnston said that Samuel started to reach in his back pocket but then said he had no identification with him. Both stated they were in Washington, D.C., to visit their girlfriends. When asked their girlfriends' names and addresses, however, Samuel did not respond; Shaw produced a brown piece of paper with a name and address on it.
 
 
 5
 Johnston then explained the purpose of his questioning and asked the men if they were carrying narcotics. Both denied they were. Johnston asked Shaw if he would mind being patted down. Johnston also stated that he advised Shaw that he had the right to refuse. Johnston stated that Shaw did not consent verbally, but instead took a half step forward holding his jacket open with both hands in a manner Johnston said he understood to be a consent to the pat down.
 
 
 6
 The pat down revealed that Shaw was carrying a package in his groin area which contained 100 vials of a substance which appeared to be crack and which field tested positive for cocaine. Both men were advised that they were under arrest. Samuel was then searched and a pack was found in his groin area which contained 100 vials of what appeared to be crack and 20 vials of a white powder, all of which field tested positive for cocaine.
 
 
 7
 Shaw also testified at the suppression hearing. He said that Johnston identified himself as a DEA agent and said that he wanted to ask them some questions. Shaw claimed that Johnston told them he was armed and that he was going to search them. When asked if he had voluntarily consented to the search, Shaw responded only that he had felt that he had no choice. Shaw also said that Johnston never told them they were free to leave or to refuse to answer his questions.
 
 
 8
 The district court rejected Shaw's testimony and credited that of Agent Johnston. The court found there had been no show of force, no attempt to prevent the men from leaving the restroom and that Shaw had consented to the search. The court also held that the cocaine found on Shaw, in connection with the admission by the men that they were traveling together, Samuel's action when asked for identification, his vagueness concerning his visit and his visible nervousness, presented the agents with probable cause to arrest Samuel. The court further found that the search of Samuel was a valid search incident to arrest. Based on these grounds, the court denied the defendants' suppression motion.
 
 
 9
 The men entered into a plea agreement in which they pleaded guilty to one count under 21 U.S.C. Sec. 841, and the government dismissed the other charge. The agreement preserved the appellants' right to appeal the court's ruling on the suppression motion. Both appellants were sentenced to five years' imprisonment, to be followed by four years of supervised release.
 
 
 10
 Both defendants appeal, claiming the court erred in denying their suppression motion. They argue that during the encounter with the agents they were in effect "seized" without a warrant or probable cause in violation of the fourth amendment. Therefore, any subsequent search was tainted by the illegal seizure, and any evidence discovered in the search must be suppressed.
 
 
 11
 We can find no error in the court's ruling: "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." Florida v. Royer, 460 U.S. 491, 497 (1983). The mere fact that the agents in this case approached the appellants and asked for their cooperation, in the absence of evidence of coercive circumstances, does not implicate the fourth amendment. United States v. Lehmann, 798 F.2d 692, 694 (4th Cir.1986).
 
 
 12
 The district court heard the testimony and, based on its first-hand observation of the witnesses' demeanor, credited the agent's account of events over Shaw's. The court found that no seizure occurred prior to the mens' arrest and that Shaw voluntarily consented to the pat down. Such factual determinations will be accorded great deference and will not be overturned unless shown to be clearly erroneous. United States v. Breit, 712 F.2d 81, 84 (4th Cir.1983). The appellants have failed to make such a showing.
 
 
 13
 Furthermore, we agree with the district court that probable cause existed for the arrest of Samuel. Probable cause for an arrest exists when, "at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." United States v. Manbeck, 744 F.2d 360, 376 (4th Cir.1984), cert. denied sub nom. O'Hare v. United States, 469 U.S. 1217 (1985). The existence of probable cause is to be judged by the "totality of the circumstances." Manbeck, 744 F.2d at 376.
 
 
 14
 A number of factors within the knowledge of the officers combine to establish the existence of probable cause for the arrest of Samuel in this case. Samuel's actions regarding identification, his vagueness with respect to the purpose of his visit, his admission he was traveling with Shaw, and, subsequently, the cocaine found on Shaw, would prompt a prudent person to believe that a crime was being committed by Samuel.* Once the validity of the arrest was established, the subsequent search of Samuel was permissible as an incident of a valid arrest. Lehmann, 798 F.2d at 695.
 
 
 15
 Accordingly, the judgments of conviction are
 
 
 16
 AFFIRMED.
 
 
 
 *
 Samuel contends that the mere fact that he may have fit a drug courier profile is not enough to constitute a reasonable suspicion, much less probable cause for arrest. See Reid v. Georgia, 448 U.S. 438, 440 (1980). The government, however, does not rely upon use of a drug courier profile to justify the arrest of Samuel. We conclude that by the time the agents arrested Samuel, they had much more information on which to rely