**UNITED STATES of America, Plaintiff,**

v.

**Harrison GREEN, Defendant.**

**Criminal No. 2:96–00050.**

United States District Court, S.D. West Virginia, Charleston Division.

Aug. 14, 1996.

Philip Combs, Assistant U.S. Attorney, Charleston, WV, for plaintiff.

Nathan Hicks, Jr., Charleston, WV, for defendant.

## *MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

On August 5, 1996 came Defendant Harrison Green in person and with counsel, Nathan A. Hicks, Jr., and also came the Government by Philip Combs, Assistant United States Attorney, for a pretrial motions hearing.

The Court addressed Defendant's motion to suppress which claimed he was stopped and searched in violation of his Fourth Amendment rights. The Government presented two witnesses. The Defendant did not call any witnesses. Officer Thomas M. Cook, a criminal investigator for Amtrak, testified that on March 15, 1996 he identified, by using the Amtrak reservations computer, two people he believed to be involved in transporting illegal drugs from the New York City area to Charleston. Cook testified that based on this information he approached the Defendant at the Amtrak station in Charleston, identified himself as a police officer, and asked to speak with him. Cook testified Defendant consented to talk to him. The Defendant told Cook that he was traveling alone. Based on the computer search and on his observations at the train station, however, Cook did not believe that Defendant was traveling alone.

Defendant's statement that he would be staying in Charleston for four days also raised Cook's suspicion because Defendant had no luggage except a small gym bag. Cook testified that during the questioning the Defendant became visibly nervous. Cook testified Defendant consented to the search of his gym bag, but that the search revealed no illegal contents.

Cook testified he then asked Defendant if he could search his jacket and that, again, Defendant consented. On searching the jacket, Cook stated that he felt a hard lump in Defendant's pocket, and that Defendant identified it only as papers. Cook testified the object in Defendant's pocket was hard and lumpy and did not feel at all like papers, but that based on his training and experience, the object felt like crack cocaine rocks. Cook then reached in Defendant's pocket and removed a plastic bag containing crack cocaine from the pocket. Following this discovery Green was arrested.

Cook testified that prior to the arrest Defendant's movements were not restricted in any way, no guns were displayed, he was not threatened, and that he was free to leave at any time.

The Court also heard testimony from Trooper Wilson Sutton of the West Virginia State Police Bureau of Criminal Investigation. Trooper Sutton testified that he witnessed Cook ask for Green's permission to search him. Trooper Sutton said that Defendant gave his consent for the search voluntarily, and that he did not witness any coercion throughout the encounter between Cook and the Defendant.

The Court finds and concludes that the crack cocaine found on the Defendant on March 15, 1996 is admissible. There is no

evidence before the Court indicating that prior to Defendant's arrest, Cook did not have Defendant's consent to ask him questions, search his bag and his pockets. Cook testified that Defendant consented to each step during the encounter. Encounters such as the one initiated by Cook with Defendant may be initiated without reasonable, articulable suspicion. In *Florida v. Bostick,* 501 U.S. 429, 435, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991), the Supreme Court held:

> "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ... ask to examine the individual's identification ... and request consent to search his or her luggage ... as long as the police do not convey a message that compliance with their requests is required."

There is no evidence in the record that Cook's encounter with the Defendant involved any form of coercion. The Defendant did not testify at the hearing and called no witnesses to contradict the Government's account. Our Court of Appeals held that a suspect's voluntary cooperation with police requests such as the ones in this case do not "absent coercive circumstances ... implicate the Fourth Amendment." *United States v. Lehmann,* 798 F.2d 692, 694 (4th Cir.1986). The evidence before the Court indicates that Green consented at each stage of his encounter with Cook and that the Fourth Amendment was not violated.

■ The Supreme Court has established an "objective reasonableness" standard for the measure of a scope of a suspect's consent under the Fourth Amendment. *Florida v. Jimeno,* 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). In determining the voluntariness of consent, a district court must examine "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). In this case the length of detention was short and the Defendant was not subjected to repeated and prolonged questioning. The encounter occurred in a public place with at least one witness present.

■ A suspect's "objectively reasonable" consent to a body search indicates consent to a "traditional frisk search," including a "sweeping motion over the outer garments...." *United States v. Rodney,* 956 F.2d 295 (D.C.Cir.1992). The search conducted in this case was not by any means unusually intrusive relative to body searches generally. Thus, the Court finds that Cook's approach to Defendant, his questioning, the search of the bag and his initial patdown search was lawful.

Finally, the Supreme Court found that where an officer discovers, during a patdown search of the outer garments, an object "whose contour or mass" makes it readily identifiable as contraband, its seizure is justified. *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In this case the consensual search enhanced Officer Cook's suspicion of Defendant to the point of providing the probable cause necessary for further searching because, based on his knowledge and training concerning the packaging and transportation of drugs, Cook could tell from the feel of the object during the initial patdown that it was crack cocaine.

The *Dickerson* court applied the plain view doctrine by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search rather than through the sense sight. The court stated:

> "The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point. The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resorts to a neutral magistrate under such circumstances would often be impractical and would do little to promote the objectives of the Fourth Amendment. The same can be said of the tactile discoveries of contraband." (Citations omitted).

*Dickerson,* 508 U.S. at 375, 113 S.Ct. at 2137. The court went on to hold that a "suspect's privacy interests are not advanced by a categorical rule barring the seizure of contraband plainly detected through the sense of touch", and that the "seizure of an item whose identity is already known occasions no further invasion of privacy." *Id.* at 377, 113 S.Ct. at 2138. (Citations omitted).

The Court finds and concludes that Officer Cook's patdown search of Defendant was lawful. Defendant gave consent to the search and when Officer Cook identified the crack cocaine based on its feel, there was no invasion of Defendant's privacy beyond that already authorized by the Defendant's consent to the search. Because the object Officer Cook felt in Defendant's pocket was contraband, its warrantless seizure was justified by the same practical considerations that adhere in the plain view context.

Accordingly, the Court **DENIES** Defendant's motion for suppression.