**UNITED STATES of America,**
**Plaintiff,**

v.

**Sandra TORAIN, Defendant.**

No. 2:99–00148.

United States District Court,
S.D. West Virginia,
Charleston Division.

Dec. 9, 1999.

---

Monica K. Schwartz, Assistant U.S. Attorney, SDWV, Charleston, WV, for plaintiff.

Hunt L. Charach, Federal Public Defender, SDWV, Charleston, WV, for defendant.

### MEMORANDUM OPINION AND ORDER DENYING RECONSIDERATION

HADEN, Chief Judge.

Pending is the United States' motion to reconsider the Court's suppression order.

For reasons discussed more fully below, the Court **DENIES** the motion.

At a suppression hearing on November 1, 1999 the Court heard testimony that eight law enforcement agents went to the Charleston, west Virginia Amtrak station on the evening of July 28, 1999 because Special Agent James Balcom had received a telephone call from a Drug Enforcement Administration ("DEA") agent with the Amtrak Interdiction Unit in Albuquerque that a passenger identified as Sharon Ford was arriving. Ford was considered suspicious because she had used cash to buy a one-way ticket from Newark, New Jersey to Charleston shortly before departure. Agent Balcom testified Newark is considered a "source city" for drugs. On cross-examination, however, he acknowledged that every city on the Amtrak line east and west of Charleston is a source city. Detective Eric Loudermilk testified the agents were questioning all female passengers leaving the Newark train when he encountered a black female who identified herself as Sharon Ford and produced her ticket for him. Loudermilk then called Balcom over. Balcom testified he asked Defendant if he could speak with her, to which she agreed. He testified he then advised her the police were doing an interdiction stop for drugs, that Newark and New York were source cities, and asked her if she were carrying any drugs. She denied carrying drugs. Balcom testified he then asked Defendant if he could look in her bags, to which she also agreed.[1] In Defendant's shoulder purse, one of three closed containers in her possession, a plastic bag containing cocaine powder was found.

■ By order of November 2, 1999, the Court granted Defendant's motion to suppress the cocaine as unconstitutionally obtained. Specifically, the Court held that

---

1. Because the Court found Defendant to have been seized without a basis of reasonable suspicion, the Court did not reach the issue of Defendant's consent to the search of her shoulder purse. The Court notes, however, the agents testified that while Defendant clearly consented to search of her two travel bags, she kept the shoulder purse hidden partially behind her back. It was only when Balcom noticed the third bag and requested it, that Defendant allowed it to be taken from her, as Balcom testified, "compliant to police authority." *See United States v. Torain*, Criminal No. 2:99–00148 at 7 (S.D.W.Va. Nov. 2, 1999).

cocaine found in Defendant's purse was obtained following a seizure not based on reasonable suspicion and, thus, in violation of the Fourth Amendment to the United States Constitution. On November 30, 1999 the government moved for reconsideration of the suppression order.[2]

 Motions for reconsideration serve a limited purpose: "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3rd Cir. 1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). It is within the sole discretion of the Court as to whether the granting of a motion to reconsider is appropriate. *Boryan v. United States,* 884 F.2d 767, 771 (4th Cir.1989). A motion to reconsider should not be granted where the moving party simply seeks to have the Court "rethink what the Court ha[s] already thought through—rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983).

 The government's motion for reconsideration does not provide an applicable standard of review for such motion; however, because the motion presents no new evidence, the Court assumes the United States intends to argue a manifest error of law. The United States cites a number of Fourth Circuit decisions, many unre-

ported,[3] in support of its contention that the evidence suppressed was obtained legally from a consensual police-citizen encounter.

 In the suppression order, the Court did not reach the issue of consent to search because it found Defendant was seized when the officers told her they were working drug interdiction at the Amtrak train station, that the city she had just come from was a source city, and asked her directly whether she was carrying drugs. The Court found a reasonable person in that situation would no longer believe she was free to leave. *See Torain,* slip op. at 6.[4] The Court further found the agents had no reasonable suspicion to seize Defendant. *Id.* at 7.

The government cites *United States v. Blandshaw,* 1988 WL 76244 at *2 (4th Cir. July 21, 1988) (unpublished), asserting this circuit has expressly rejected the position in *United States v. Berry,* 670 F.2d 583 (5th Cir.1982), that agents' identification as drug agents with the purpose of drug interdiction creates a seizure environment. The Court notes initially that *Blandshaw* is unpublished and therefore not controlling law.[5] Nor do the authorities cited in *Blandshaw* as rejecting the *Berry* analysis control the issue. In *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), three of the five

---

2. Title 18, United States Code, Section 3731 provides for "[a]n appeal by the United States to a court of appeals from a decision or order of a district court suppressing or excluding evidence" to be filed within thirty days. 18 U.S.C. § 3731. There is no rule specifying the time in which a motion for rehearing or reconsideration must be filed in a criminal case; however, numerous decisions have found the government's interlocutory appeal to be timely pursuant to Section 3731 when a motion for rehearing or reconsideration was filed within thirty days following the order appealed from, thus implicitly accepting the appropriate period for reconsideration as that set by the motion for appeal. *See United States v. Martinez,* 681 F.2d 1248 (10th Cir. 1982) (collecting cases); *see also* 16A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3950.10 (1999) (same).

3. The Court notes unreported decisions have no precedential authority.

4. The government's memorandum in support of its motion does not refer to or argue from the Court's order, but rather appears to oppose Defendant's Memorandum in Support of Motion to Suppress, taking issue with Defendant's "implicit" arguments, *see, e.g.,* Mot. for Recons. at 9, rather than the Court's ruling. Defendant's memorandum was filed prior to the November 1, 1999 hearing and the government has never asserted, at the hearing or otherwise, that it was unable to respond to the Defendant's arguments at the hearing.

5. In the eleven years since *Blandshaw* was decided, the holding for which the government cites the case has not been adopted in any published opinion by our Court of Appeals.

justices deciding the case assumed, for purposes of deciding the case, that the stop constituted a seizure. *Mendenhall,* 446 U.S. at 560, 100 S.Ct. 1870. *Mendenhall* is thus not instructive.

*Blandshaw* also cites *United States v. Lehmann,* 798 F.2d 692 (4th Cir.1986), in rejecting *Berry.* In *Lehmann,* a DEA agent asked Lehmann to answer a few questions, then produced identification and told Lehmann the DEA had experienced problems with drug trafficking from the Miami area, before asking Lehmann for his identification and asking permission to search his travel bag. *Id.* at 693. However, our Court of Appeals did not address the seizure issue, relying on the district court determination that the stop was consensual. *Id.* at 694. The Court did note and rely on "the bulge in Lehmann's crotch area the size of a paperback book, and his attempts to conceal it with his jacket while offering no innocent explanation." *Id.* These particular facts distinguished that case from the Fourth Circuit opinion in *United States v. Gooding,* 695 F.2d 78 (1982), and from Defendant Torain's situation, as well.

In *Gooding,* the defendant arrived on a flight from New York City, identified as a source city, dressed casually on a business flight. DEA agents observed Gooding for half an hour as he made a two phone calls, ate a meal, made a third call, then left the airport, at which point two agents approached him. The agents asked for identification and he produced both a passport and an airplane ticket. One agent then identified himself as a narcotics investigator and asked if Gooding had narcotics, which he denied. The agent then asked to search his briefcase and bag, where drugs were found. Our Court of Appeals held that the interaction with Gooding was not a lawful *Terry*[6] stop, that is, a police stop

for the limited purpose of dispelling a reasonable suspicion that a crime has been or is being committed:

> Though not accompanied by force and carried out in a polite way, [the stop] was then prolonged through a preliminary request for identification which yielded nothing suspicious, through a direct inquiry of criminal culpability, into a request for permission to search after culpability had been denied. While from all the surrounding circumstances different factual inferences might clearly have been drawn as to whether by the time he initially consented to search this citizen's liberty was effectively "restrained" by these officers' "show of authority," the district court's implicit finding that it had been is amply supported by the evidentiary record.

*Gooding,* 695 F.2d at 82.

The *Gooding* court relied on the controlling principle that an investigative stop, amounting to a Fourth Amendment seizure, must be "supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." *Id.* (citing *Reid v. Georgia,* 448 U.S. 438, 440, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980)). Courts enforce this principle by applying "objective standards in determining whether at the time of the seizure the requisite degree of suspicion existed." *Id.* In particular, the court in *Gooding* took issue with the application of general "drug courier profiles," pointing out the court had previously specifically held that "a drug courier profile, without more, does not create a reasonable and articulable suspicion." *Id.* at 83 (citing *United States v. Harrison,* 667 F.2d 1158, 1161 (4th Cir. 1982), *cert. denied* 457 U.S. 1121, 102 S.Ct. 2937, 73 L.Ed.2d 1335 (1982)).

■ Sandra Torain bought a one-way ticket from Newark[7] to Charleston for $89

---

**6.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**7.** Because Special Agent Balcom acknowledged every city on the Amtrak line east and west of Charleston is considered a source city for drugs, this factor must be totally discount-

ed, otherwise every train passenger might be subject to random investigative stops. As the *Gooding* court noted, "[s]eizures on any such random basis are of course one of the precise evils at which the fourth amendment was aimed." *Gooding,* 695 F.2d at 83.

(eighty-nine dollars) cash shortly before departure. A DEA agent in Albuquerque noted this data on a computer screen and alerted Charleston drug agents. At the hearing Charleston drug agents provided no scintilla of additional evidence supporting a reasonable or articulable suspicion that any crime was being or had been committed.

The Court finds and concludes it made no manifest error of law in determining Torain was seized for Fourth Amendment purposes without a basis of reasonable suspicion and supressing the evidence obtained from that seizure. Accordingly, the Court **DENIES** the government's motion for reconsideration.

The Clerk is directed to send a copy of this Memorandum Opinion and Order Denying Reconsideration to counsel of record, to the United States Marshal, and to the Probation Office of the Court.