**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jean RAYMOND, Defendant–Appellant.**

**No. 96–4694.**

United States Court of Appeals, Fourth Circuit.

Argued April 9, 1998.

Decided Aug. 10, 1998.

---

310

**ARGUED:** Ann Briks Walsh, Assistant Federal Public Defender, Charleston, South Carolina, for Appellant. Mary Gordon Baker, First Assistant United States Attorney, Columbia, South Carolina, for Appellee. **ON BRIEF:** J. Rene Josey, United States Attorney, Columbia, South Carolina, for Appellee.

Before ERVIN, Circuit Judge, BUTZNER, Senior Circuit Judge, and STAMP, Chief United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge ERVIN wrote the opinion, in which Senior Judge BUTZNER and Chief Judge STAMP joined.

## OPINION

ERVIN, Circuit Judge:

Jean Raymond appeals his conviction for possession with intent to distribute crack cocaine. A South Carolina state trooper pulled over a vehicle in which Raymond was riding, ordered the car's passengers to exit the vehicle, and discovered a "cookie" of crack cocaine in Raymond's pants after a patdown search. After the district court denied Raymond's motion to suppress the evidence, Raymond pled guilty. The question before us is whether the crack evidence should be suppressed because the trooper's patdown search was unreasonable. We hold that the trooper's patdown search did not violate Raymond's rights under the Fourth Amendment and, therefore, affirm his conviction.

## I.

Jean Raymond was a passenger in a car traveling north on Interstate 95 in South Carolina. Accompanying Raymond were his ex-girlfriend and her brother, Lester McMillan, who was driving. State trooper Laird stopped the red Ford Mustang for going 86 miles per hour in a 65 miles per hour zone. A second trooper, Summers, came on the scene shortly afterward as backup for Trooper Laird. Both Summers and Laird are part

311 

of the Aggressive Criminal Enforcement Unit (ACE Team), a division of the South Carolina Highway Patrol whose members are trained specifically to patrol I-95 looking for drug trafficking activity. The details of what actually occurred during this stop are not in dispute because the event was captured on video by a camera in Trooper Laird's vehicle. That video is part of the record on appeal.

Laird requested that McMillan step out of the vehicle while Laird checked his license and registration and issued a citation. McMillan was extremely nervous, talking virtually non-stop and very quickly. Because of McMillan's nervousness, Laird asked him if he had any drugs or weapons in the car. McMillan denied having those items and readily consented to let Laird search the vehicle. Once McMillan signed the consent form, Laird raised the clipboard, which was a signal to Trooper Summers that he could begin searching the car.

Summers first asked Georgetta McMillan, who was sitting in the front seat, to get out of the car. Summers spoke with Ms. McMillan for a brief time and then asked Raymond, who was sitting in the back seat, to step out of the car. Raymond got out of the two-door vehicle somewhat awkwardly, holding a styrofoam cup full of soda. Although it cannot be seen clearly on the videotape, the officers testified that Raymond clutched his stomach as he got out of the car, as if he were trying to keep something held against the front part of his body. The videotape clearly shows that Raymond awkwardly leaned against the car while talking to Trooper Summers.

Without seeking consent, Summers began a patdown search of Raymond. Summers later testified that he felt something hard and rounded under Raymond's jacket that he suspected might be a weapon. When he felt it more fully he knew it was in the shape of a pie, rather than a gun. Summers pulled the object out from under Raymond's jacket and found a crack "cookie" that was six to seven inches in diameter and about two inches thick.

Raymond was indicted by a grand jury for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a) (1994). Raymond moved to suppress the evidence obtained during the patdown search, relying on three principal arguments: (1) the troopers violated the Fourth Amendment's prohibition of unreasonable seizures by ordering Raymond to exit the car during the traffic stop; (2) the troopers had no "articulable suspicion" that Raymond might be armed in order to justify a patdown search; and, (3) when Trooper Summers pulled the crack cookie out from underneath Raymond's jacket, he exceeded the constitutionally permissible bounds of a *Terry* patdown. The district court rejected these arguments and denied the motion to suppress.

Raymond pled guilty to possession with intent to distribute and was sentenced to 190 months in prison. This timely appeal followed in which Raymond pursues the same arguments he advanced in the district court.

## II.

The district court entered a final order in this case on August 30, 1996, and Raymond filed a timely appeal on September 3. We have jurisdiction under 28 U.S.C. § 1291.

■ We review legal conclusions involved in the district court's suppression determination *de novo,* but review factual findings underlying the legal conclusions for clear error. *United States v. Rusher,* 966 F.2d 868, 873 (4th Cir.1992).

## III.

We ordered this case held in abeyance pending the Supreme Court's decision in *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). In *Wilson,* the Court held that police officers may, as a matter of course, order passengers to exit a vehicle during a routine traffic stop pending completion of the stop. The Court adopted this bright line rule after weighing the public's strong interest in officer safety against the minimal intrusion on a car passenger's privacy interests. *See id.* at 885–86. Raymond acknowledges in his brief that *Maryland v. Wilson* forecloses his argument that ordering him out of the vehicle was unlawful.

Raymond therefore relies on his remaining two arguments to challenge the legality of

the search—that the troopers had no articulable suspicion that Raymond was armed before conducting the patdown, and that Trooper Summers exceeded the bounds of a patdown search in pulling out the crack cookie. We find that neither of these contentions is meritorious.

### A.

Police may conduct a patdown search without a warrant if, under the totality of the circumstances, the officer has an articulable, reasonable suspicion that a person is involved in criminal activity and that he is armed. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The reasonableness of the search is measured objectively. If a reasonably prudent person would believe that his safety, or the safety of others, is endangered, he may conduct a limited search of outer clothing to discover any weapons. *Id.* at 27, 88 S.Ct. 1868.

Raymond argues that the officers had made the decision to pat him down before he got out of the car and that any intervening behavior on his part was thus irrelevant to their decision. In support of this argument, Raymond points to Trooper Laird's testimony that it is the troopers' policy to pat down any passengers in a vehicle when the driver has consented to a search of his car. *See* J.A. at 24–25; 30–31. Raymond argues that the district court ignored this testimony and clearly erred in its finding that, independent of whatever policy the troopers generally follow, Raymond's awkward behavior while exiting the car in this particular case provided an articulable suspicion that he may have been armed.

We need not reach the question of whether a policy of patting down all the passengers in a vehicle being searched would be permissible as a matter of course under *Terry* because, in this case, independent circumstances gave rise to an articulable suspicion that Raymond might have been armed with a weapon. The troopers had a reasonable basis for conducting a patdown search of Raymond based on his strange exit from the car, as if he were attempting to conceal something under his jacket, and the awkward way in which he leaned against the car while talking to Trooper Summers. *See United States v. Lehmann*, 798 F.2d 692, 694–95 (4th Cir.1986) (police had probable cause to arrest suspect in airport who carried a package the size and shape of a paperback book in his pants, attempted to conceal it under his jacket, and matched a drug courier profile).

Raymond argues that the videotape does not bear out the testimony of the police officers as to Raymond's behavior. In fact, the videotape is inconclusive because Raymond's back is turned to the camera during his exit from the car. Trooper Summers had a much better view based on his position beside and just in front of the passenger door. We cannot say that the district court clearly erred in finding the trooper's testimony credible regarding Raymond's awkward behavior while exiting the car. Because Raymond awkwardly exited the car and unnaturally leaned against it in an attempt to conceal an object under his jacket and pants, the state troopers were justified in performing a *Terry* patdown for weapons.

### B.

Raymond's remaining argument is that Summers exceeded the boundaries of a *Terry* stop by continuing to manipulate the package and by extracting it after he had ascertained it was not a weapon. Raymond contends that Summers should have stopped his patdown as soon as he knew the hard item was not a gun because Summers did not immediately know the package was crack.

*Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), set forth the "plain feel" doctrine, which holds that contraband discovered during a lawful *Terry* stop is admissible so long as the search does not exceed the bounds permitted by *Terry*. *Id.* at 373, 113 S.Ct. 2130. Thus, if the contour or mass of the object makes its identity immediately apparent, the officer may lawfully seize it. *Id.* at 375, 113 S.Ct. 2130. Once an officer has determined that the object is not a weapon, however, and if its shape or size does not indicate its contraband nature, the search must stop. *See id.* at 378, 113 S.Ct. 2130.

Trooper Summers testified that the top part of the package felt like a gun. He then pulled it out of Raymond's waistband. Once he felt the whole package, he immediately knew it was not a gun, but rather, crack cocaine. From his training, Trooper Summers knew that crack cocaine was often created in a pie tin. As part of the ACE Team, Summers had been involved in other crack busts that involved similarly shaped items.

Raymond, however, points to contradictory testimony by Summers as to when he first knew the package in question contained crack. *Compare J.A.* at 48 ("I could tell that it was something hard.... I didn't know what it was.") *with J.A.* at 54 ("At that time I grabbed it and realized that it was not a gun, to my relief. It was a narcotic, it was crack. [Q.] Was that immediately apparent to you? [A.] Yes, ma'am."). The district court made a factual finding that Summers first believed the hard object under Raymond's jacket was a gun, but during the course of removing the object, became aware that it was not a weapon but rather a crack cocaine cookie. Raymond argues that the district court clearly erred in this factual determination.

The question is whether the incriminating nature of the object was immediately apparent. This is not a case in which Trooper Summers went on manipulating the crack cookie for some time after he concluded it was not a weapon. *Cf. Dickerson,* 508 U.S. at 377–78, 113 S.Ct. 2130. Rather, Summers, after determining that the object was not a gun, immediately realized from the shape of the object and his experience on the force that it was a crack cookie. Because there is substantial support for this finding in the record, we cannot say that the district court clearly erred in crediting this portion of Trooper Summers's testimony.

Trooper Summers's immediate recognition of the contraband is confirmed by viewing the videotape and noticing that the entire patdown search, from its inception to the moment Summers pulled out the crack cookie, was accomplished in approximately five seconds. This short length of time convinces us that Trooper Summers, after determining the hard object under Raymond's jacket was not a weapon, immediately was able to identi-

fy it as a crack cookie. Therefore, under the Court's "plain feel" analysis in *Dickerson,* the trooper's *Terry* patdown did not constitute an unreasonable search.

## IV.

For these reasons, we find no merit in Raymond's arguments on appeal. Accordingly, his conviction and sentence are affirmed.

*AFFIRMED.*