**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4474

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BRODERICK F. JONES,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond. Robert E. Payne, District
Judge. (3:05-cv-00253-REP)

Argued: March 13, 2007               Decided: May 24, 2007

Before NIEMEYER, MICHAEL, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Robert James Wagner, Assistant Federal Public Defender,
OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for
Appellant.  Stephen Wiley Miller, OFFICE OF THE UNITED STATES
ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:** Michael S.
Nachmanoff, Acting Federal Public Defender, Alexandria, Virginia,
Sapna Mirchandani, Research and Writing Attorney, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant.  Chuck
Rosenberg, United States Attorney, Angela Mastandrea-Miller,
Assistant United States Attorney, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant Broderick F. Jones was found guilty after a bench trial of unlawful possession of a firearm by a felon in violation of 18 U.S.C.A. § 922(g)(1) (West 2000). The district court sentenced Jones to 51 months imprisonment. On appeal, Jones contends that the district court erred in denying his motion to suppress evidence and in refusing to apply a two-level reduction to his offense level based on acceptance of responsibility. For the following reasons, we affirm.

I.

On the evening of March 6, 2005, into the early hours of March 7, 2005, Sergeant Chris Preuss of the Virginia Commonwealth University Police Department was patrolling on a bicycle outside a nightclub called the 534 Club, which is in a known high-crime area in Richmond, Virginia. At approximately two o'clock in the morning, Club 534 was closing and more than 500 people were lingering around the area. An altercation involving fifteen to twenty female club patrons ensued, and Sergeant Preuss and other officers were called to intercede and restore order. While he was following several of the women involved in the altercation down the street, a woman in a car approached Sergeant Preuss and told him that she had seen a black male with a gun in his hand standing by the very last car on the right hand side of the parking lot near

2

Club 534. Seconds later, Sergeant Preuss went directly to the location and observed a black male standing near a car that was parked in the back right hand corner of the parking lot. The man was later identified as the defendant. Sergeant Preuss observed a second man, later identified as Corry Woody, who appeared to be sleeping in the rear passenger seat of the car.

Sergeant Preuss dismounted his bicycle and approached the car to determine whether Jones was the individual described to him by the citizen. As Sergeant Preuss approached the vehicle, Jones sat down in the front passenger seat of the car, but left the door ajar. Sergeant Preuss walked up to the car, stood in the wedge between the side of the car and the open door, and asked Jones if the man in the back seat was all right.

When Sergeant Preuss approached Jones, he observed that Jones's left hand was concealed between his knees. He asked Jones what was in his left hand, and Jones opened his hand to show Sergeant Preuss that it was empty. At that point, Jones suddenly and without warning jumped from the passenger seat towards Sergeant Preuss, which placed him "maybe a foot away" from Sergeant Preuss's face. J.A. 86. Viewing this as an overreaction to his question, Sergeant Preuss put his hands up and backed away while asking Jones what was going on.

Sergeant Preuss testified that things then went "a little haywire." J.A. 86. In addition to Jones's sudden and seemingly

3

aggressive motion, Sergeant Preuss was then faced with a second threat--with Jones no more than a foot from Sergeant Preuss's face, Woody woke up and became verbally combative. Concerned about his own safety, Sergeant Preuss ordered Jones to turn around and place his hands on the car in order to conduct a patdown search. Instead of complying with this request, however, Jones doubled over, falling into Sergeant Preuss while bringing his hands toward his own body. After Jones doubled over, he complained of pain from a gun shot wound. Sergeant Preuss believed the complaint was feigned and pushed Jones upward toward the car. While these events were unfolding, Woody, who continued to be verbally combative, tried to exit the rear door of the vehicle, which Sergeant Preuss struggled to prevent by simultaneously placing his body against the door. A third man, Albert Anderson, also arrived and attempted to intercede on Jones's behalf.

During the struggle, Sergeant Preuss managed to call for backup. Because several officers were still at the front of the parking lot dealing with the aftermath of the earlier altercation, help arrived quickly. Officer Milligan arrived and, upon observing Woody attempting to reach under the rear car seat, drew his weapon and ordered Woody to exit the car. Anderson was restrained after attempting to charge other officers on the scene, and Jones was taken to the ground and handcuffed. During a patdown search, the officers retrieved a loaded .357 magnum from Jones's outside jacket

4

pocket and two additional firearms from the car, one under the front passenger seat. Jones was charged with being a felon in possession of a firearm.

Prior to trial, Jones moved to suppress the evidence seized on the night of his arrest, arguing that his seizure violated the Fourth Amendment. After an evidentiary hearing, the district court denied Jones's motion to suppress. Immediately thereafter, Jones informed the court that he wished to enter a conditional guilty plea that preserved his right to appeal the denial of his suppression motion, any adverse rulings at sentencing, and any other appellate issues. The government, however, would only agree to a conditional plea that allowed an appeal of the suppression issue.

After plea negotiations fell through, Jones proceeded to a bench trial. On the morning of trial, after the district court denied Jones's motion to dismiss the indictment for Speedy Trial Act violations, Jones stipulated to the evidence presented by the government at the suppression hearing and at trial. Jones presented no evidence and raised no new motions on his behalf. The district court found Jones guilty of the charged offense.

The presentence investigation report ("PSR") recommended that Jones be assigned an offense level of 16 and a Category V criminal history, resulting in a Guidelines range of 41 to 51 months imprisonment. Jones objected to the PSR's failure to reduce his

offense level to reflect his acceptance of responsibility. <u>See</u> U.S.S.G. § 3E1.1. Jones argued that he qualified for acceptance of responsibility because he proceeded to trial for the sole purpose of preserving appellate issues that were unrelated to his factual guilt.

The district court overruled Jones's objection and determined that Jones failed to accept responsibility by continuing to challenge the validity of his arrest on constitutional grounds, by delaying in stipulating to the government's evidence until the morning of trial, and by failing to admit his guilt until he met with the probation officer regarding his PSR. The court adopted the PSR's recommendations and sentenced Jones to 51 months imprisonment.

## II.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. It was "designed to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." <u>INS v. Delgado</u>, 466 U.S. 210, 215 (1984) (internal quotation marks omitted). "The Supreme Court has recognized three distinct types of police-citizen interactions: (1) arrest, which must be supported by probable

6

cause; (2) brief investigatory stops, which must be supported by reasonable articulable suspicion; and (3) brief encounters between police and citizens, which require no objective justification." United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002) (citations omitted). In reviewing a denial of a motion to suppress, "we review the factual findings of the district court for clear error and its legal conclusions de novo." See United States v. Brown, 401 F.3d 588, 592 (4th Cir. 2005) (internal quotation marks omitted).

Jones contends that the district court erred in denying his motion to suppress the evidence as a result of his encounter with Sergeant Preuss. Specifically, he asserts that he was unlawfully seized on three occasions: when Sergeant Preuss positioned himself within the passenger door opening, when Sergeant Preuss asked Jones what was in his left hand, and when Sergeant Preuss ordered him to turn around and place his hands on top of the car. Jones argues that at no point did Sergeant Preuss have a reasonable, articulable suspicion or probable cause to believe that Jones had engaged in criminal activity.

The district court found that the initial encounter between Sergeant Preuss and Jones was consensual and, therefore, did not implicate the protections of the Fourth Amendment. The district court found that a seizure did occur when Sergeant Preuss ordered Jones to place his hands on the car, but that this seizure did not

7

violate Jones's Fourth Amendment rights because "[t]he officer had a reasonable articulable apprehension of an assault on a police officer when the defendant jumped out of the car in response to a perfectly simple limited, very civilly stated, nonauthoritatively stated, question. . . . [T]he officer was entitled at that juncture to stop the assault and he did." J.A. 166. Accordingly, the district court denied Jones's motion to suppress. In sum, the district court found that the seizure was justified by the totality of the circumstances including the citizen report of an armed man in the location where Jones was found, the high-crime area, and Sergeant Preuss's reasonable fear for his safety when Jones jumped toward Sergeant Preuss in a seemingly aggressive manner.

A.

We begin with Jones's challenge to the district court's finding that Jones's encounter with Sergeant Preuss was a consensual one prior to Jones's act of jumping from the vehicle. Determining whether an encounter was consensual or a seizure requires consideration of many factors, such as whether there existed "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. Mendenhall, 446 U.S. 544, 554 (1980). A seizure

of the person occurs only when a law enforcement official, by means of physical force or a show of authority, restrains the liberty of a citizen in such a way that a reasonable person would believe he was not free to terminate the encounter, and the person submits to the show of authority.  See California v. Hodari D., 499 U.S. 621, 626 (1991).  "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions.  So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required."  Florida v. Bostick, 501 U.S. 429, 434 (1991) (citation and internal quotation marks omitted).

Having considered the facts in light of the appropriate factors, we agree that Sergeant Preuss's act of positioning himself in the passenger doorway and asking Jones what was in his left hand was a consensual police-citizen encounter.  This encounter involved only Sergeant Preuss and Jones.  When Sergeant Preuss approached Jones, Jones was already seated in the front seat of the vehicle with the door ajar.  Sergeant Preuss placed himself in the doorway to speak with Jones, but the record contains no indication that his placement was threatening or constituted a show of authority.  He asked Jones in a conversational tone whether Woody, who was asleep in the rear seat, was okay and simply asked Jones what was in his left hand.  Sergeant Preuss never displayed his weapon, nor did he touch or in any way prevent Jones from exiting the vehicle and

9

terminating the conversation. Sergeant Preuss simply asked questions, to which Jones voluntarily responded. Such an encounter does not constitute a seizure. See Weaver, 282 F.3d at 312-13 (no seizure where defendant voluntarily complied with officers' requests).

## B.

As found by the district court, when Jones jumped up unexpectedly and Sergeant Preuss ordered him to turn around and place his hands on top of the vehicle, the previously consensual encounter did become a seizure, implicating Fourth Amendment concerns. The question thus becomes whether Sergeant Preuss's act of seizing Jones, followed by the patdown which revealed the initial handgun, was reasonable under the totality of the circumstances.

In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court recognized that

> there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is

10

entitled to draw from the facts in light of his experience.

Id. at 27 (internal citations omitted); see also United States v. Raymond, 152 F.3d 309, 312 (4th Cir. 1998) ("Police may conduct a patdown search without a warrant if, under the totality of the circumstances, the officer has an articulable, reasonable suspicion that a person is involved in criminal activity and that he is armed. . . . If a reasonably prudent person would believe that his safety, or the safety of others, is endangered, he may conduct a limited search of outer clothing to discover any weapons." (internal citation omitted)).

Here, Sergeant Preuss initially approached Jones in response to an eyewitness report by a citizen who had observed a black male carrying a firearm in a specific location within the Club 534 parking lot. Even if Sergeant Preuss did not have reasonable suspicion for a Terry stop at that time, cf. Florida v. J.L., 529 U.S. 266, 271-72 (2000), when Jones unexpectedly and suddenly jumped from the vehicle in response to Sergeant Preuss's questions, the circumstances evolved to present a much more suspicious and dangerous climate. Sergeant Preuss had received an eyewitness citizen report of an armed man in the exact location where he found Jones, and Sergeant Preuss had been involved in dealing with the altercation that had just occurred outside the nightclub, creating heightened tension in an already-known high-crime area. When Jones engaged in activity which Sergeant Preuss reasonably perceived to

11

be aggressive in nature -- jumping from the vehicle suddenly and unexpectedly in response to an innocuous question -- the totality of the facts known to Sergeant Preuss combined to create a reasonable, articulable suspicion that Sergeant Preuss was in danger and that Jones was armed and dangerous.

As we have previously stated, "the very point of Terry was to permit officers to take preventive action and conduct investigative stops before crimes are committed, based on what they view as suspicious -- albeit even legal -- activity." United States v. Perkins, 363 F.3d 317, 326 (4th Cir. 2004). "We cannot afford to read the Fourth Amendment to require officers to wait until criminal activity occurs, and perhaps until innocent bystanders are physically harmed, before taking reasonable, preventive measures." Id. at 328; see Adams v. Williams, 407 U.S. 143, 145 (1972) ("The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response."). Given the totality of the circumstances, we agree with the district court that Sergeant Preuss was justified in seizing Jones and conducting a patdown search for weapons. Accordingly, we affirm the district court's denial of Jones's motion to suppress.

12

III.

Jones's second contention is that the district court erred in refusing to apply the two-level reduction of his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1. After the suppression hearing, Jones wanted to enter a conditional guilty plea preserving his right to appeal the denial of his suppression motion, any adverse rulings at sentencing, and any other appellate issues. The government offered Jones a plea agreement which would allow him to appeal only the denial of his suppression motion, but Jones declined the government's limited offer. Jones elected a bench trial, and on the morning of trial advised the court that he would stipulate to the government's evidence.

At the sentencing hearing, Jones argued that he was entitled to the two-level acceptance of responsibility reduction because he proceeded to trial solely to preserve his appellate rights on issues unrelated to his factual guilt. The district court overruled Jones's objection, concluding that Jones's desire to preserve all of his rights to appeal, delay in stipulating to the government's evidence until the morning of trial, and failure to admit his guilt until meeting with the probation officer regarding the PSR amounted to the "antithesis of acceptance of responsibility." J.A. 350.

Section 3E1.1 provides for a two-level reduction of the offense level "[i]f the defendant clearly demonstrates acceptance

13

of responsibility for his offense." U.S.S.G. § 3E1.1(a). Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. . . . the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1 comment. (n.5); see also United States v. Greenwood, 928 F.2d 645, 646 (4th Cir. 1991) ("A trial judge's determination that a defendant is entitled to a two-level reduction for acceptance of responsibility under Guidelines § 3E1.1 is a factual issue that will not be disturbed unless clearly erroneous.").

As a general rule, acceptance of responsibility is inconsistent with a defendant's decision to exercise his right to a trial. The Guidelines, however, provide for a narrow exception:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1 comment. (n.2) (emphasis added).

This case is not one of the "rare situations" in which a defendant who proceeds to trial may still be entitled to an acceptance of responsibility reduction. Id. Jones's decision to proceed to trial to preserve his right to appeal the denial of his suppression motion would not have disqualified him from receiving an acceptance of responsibility reduction. See United States v. Muldoon, 931 F.2d 282, 289 (4th Cir. 1991) (concluding that Muldoon was entitled to an acceptance-of-responsibility reduction under the Guidelines where he proceeded to trial in order to preserve his constitutional and statutory challenge to the wiretaps but did not testify or introduce any evidence). But in this case, Jones rejected the government's limited offer of a conditional guilty plea in order to preserve any and all issues that might exist for appeal, and while he ultimately stipulated to the facts, he did not do so until the morning of trial, thereby requiring the government to be fully prepared for trial and have its witnesses present. Cf. United States v. Dickerson, 114 F.3d 464, 469-70 (4th Cir. 1997) (concluding that acceptance-of-responsibility reduction not warranted where defendant put the government to its burden of proof at trial by denying an essential factual element of his guilt). Moreover, Jones did not admit his guilt until he met with the probation officer regarding the PSR. Given these facts and the deference to which the district court's decision is entitled in this regard, we cannot say that the district court clearly erred in

finding that Jones was not entitled to a two-level reduction for acceptance of responsibility.

## IV.

For the foregoing reasons, we affirm Jones's conviction and sentence.

<u>AFFIRMED</u>