**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 08-4228

_____

UNITED STATES OF AMERICA,

             Plaintiff – Appellee,

       v.

BARRY J. WORKS,

             Defendant – Appellant.

_____

Appeal from the United States District Court for the Southern
District of West Virginia, at Huntington.  Robert C. Chambers,
District Judge.  (3:07-cr-00050-1)

_____

Argued:  January 30, 2009            Decided:  July 21, 2009

_____

Before SHEDD and AGEE, Circuit Judges, and Arthur L. ALARCÓN,
Senior Circuit Judge of the United States Court of Appeals for
the Ninth Circuit, sitting by designation.

_____

Affirmed by unpublished opinion.  Judge Shedd wrote the opinion,
in which Judge Agee and Senior Judge Alarcón joined.

_____

**ARGUED:** Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Charleston, West Virginia, for Appellant.  Erik S.
Goes, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West
Virginia, for Appellee.  **ON BRIEF:** Mary Lou Newberger, Federal
Public Defender, George H. Lancaster, Jr., Assistant Federal
Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Charleston, West Virginia, for Appellant.  Charles T. Miller,
United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Barry Works was charged with one count of possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). After entering a conditional guilty plea, Works was sentenced to 37 months with three years supervised release. Works now appeals the denial of his suppression motion. For the following reasons, we affirm.

I

In reviewing the denial of a suppression motion, we construe the facts in the light most favorable to the government. United States v. Murphy, 552 F.3d 405, 409 (4th Cir. 2009). We review the district court's factual findings for clear error and its legal conclusions de novo. Id.

In January 2006, Sergeant Combs of the Huntington, West Virginia, Police Department received a report that a blue Chrysler was regularly delivering drugs from out of state to individuals at a local apartment occupied by Patrick Bryant. Following up on the information, Combs went to Bryant's apartment complex on the evening of January 26, 2006. The complex contained four units: two on the first floor and two, including Bryant's apartment, on the second floor.

Combs positioned himself in a concealed location and observed a dark-colored Chrysler arrive at the apartment

3

complex. The Chrysler's occupants entered the building. Combs knew that Bryant was on home incarceration for a drug-related offense and thus was subject to search at any time. Therefore, Combs contacted officers with the home incarceration unit and requested that they search Bryant's apartment. The home incarceration unit arrived quickly and brought additional back-up officers for assistance. Combs led a team of officers to watch the back door of Bryant's apartment while the home incarceration unit approached the front entrance to conduct the search.

Because Bryant's apartment was on the second floor, the officers had to ascend a narrow stairwell. As Combs entered the bottom of the stairwell, he saw Works exiting Bryant's apartment through the back door. Works was carrying a plastic grocery bag. When Combs shouted for Works to stop, Works tried to enter an apartment across the hall. However, the door to that apartment was locked. Combs continued to approach Works and again instructed him to stop. Works then tried to reenter Bryant's apartment. Combs observed that Works looked nervous, and he grabbed Works to keep him from reentering Bryant's apartment.

Works attempted to shield the plastic bag with his body and clothes. When Combs asked what was in the bag, Works said that it contained flour. Combs felt the outside of the bag to ensure

4

that it did not contain a weapon and noted that it felt "mushy" and not like flour. Because the hallway was narrow, Combs passed Works down to the officers in the stairwell behind him. Combs resumed watching the door to Bryant's apartment. His entire encounter with Works lasted approximately thirty seconds.

Officer Livingston took charge of Works at the bottom of the stairs. Livingston noticed Works switch the bag from one hand to the other, attempting to hide it under his armpit. Livingston asked what was in the bag, and Works repeated that it contained flour. Livingston felt the outside of the bag and told Works that it did not feel like flour. Livingston thought there was a good chance that the bag contained contraband (i.e. drugs). Livingston handed the bag to Officer Bills while Livingston frisked Works to ensure that he did not have a weapon.

Bills, who overheard Works' statement to Livingston regarding the contents of the bag, knew Works from two previous drug and gun cases. Bills was dubious of Works' claim that the bag contained flour. Bills looked into the bag; based on his training and experience, he instantly recognized (and a field test subsequently confirmed) that the bag contained cocaine.[1]

---

[1] The record does not establish whether the plastic bag was closed. If it was not, the contents of the bag were likely
(Continued)

After Works was arrested and advised of his Miranda rights, he voluntarily admitted ownership of the cocaine.

## II

Works was indicted and moved to suppress the cocaine, contending that he was denied his Fourth Amendment right to be free from unreasonable searches and seizures. The district court denied the suppression motion, holding that the officers had reasonable suspicion to justify the stop at its inception. See Terry v. Ohio, 392 U.S. 1, 30 (1968). The court also found that the scope of the search was objectively reasonable given the totality of the circumstances. On appeal, Works contends that there was no reasonable suspicion to perform a Terry stop and that, even if the Terry stop was permissible, Officer Bills acted unreasonably by looking into the bag. The government advances three independent justifications for the officers' actions: (a) Terry; (b) exigent circumstances; and (c) the "plain feel" doctrine.[2]

---

admissible under the "plain view" doctrine. See e.g. Horton v. California, 496 U.S. 128 (1990).

[2] Although the district court based its decision solely on Terry, we may nevertheless affirm on alternative grounds. See Covenant Media of SC, LLC v. City of North Charleston, 493 F.3d 421, 431 (4th Cir. 2007).

The Fourth Amendment guarantees the "right of . . . people to be secure in their persons . . . against unreasonable searches and seizures." The Fourth Amendment "does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." Florida v. Jimeno, 500 U.S. 248, 250 (1991). While warrantless searches are presumptively unreasonable, United States v. Holmes, 376 F.3d 270, 274-275 (4th Cir. 2004), one important exception allows a police officer to conduct a brief investigatory stop where the "officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." Terry, 392 U.S. at 30. Furthermore, the officer is allowed to "take such steps as [are] reasonably necessary to protect [his] personal safety" if he believes that the person being stopped may be armed and presently dangerous. United States v. Hensley, 469 U.S. 221, 235 (1985). The scope of the search must be "reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry, 392 U.S. at 29.

To assess the validity of a Terry stop and frisk, we consider the totality of the circumstances, giving due weight to common sense judgments reached by officers in light of their experience and training. United States v. Perkins, 363 F.3d

7

317, 321 (4th Cir. 2004). We employ an objective standard to determine whether "the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate." Terry, 392 U.S. at 21-22 (internal citations omitted).

B.

We agree with the district court that the police had a reasonable suspicion to justify the Terry stop and frisk. Officer Combs was lawfully present at the apartment building to investigate a tip concerning drugs in Bryant's apartment. After corroborating information received from the tip, Combs observed Works exiting the apartment as the home confinement unit executed a valid search for drugs.

Upon seeing the officers, Works attempted to conceal the bag he was holding and quickly tried to enter another door so as to avoid passing the officers in the hallway. Officer Combs further observed that Works appeared nervous. Given the totality of the circumstances – the tip which was at least partially corroborated, the valid search for drugs, the lateness of the hour, Works' evasive conduct – and giving due weight to

the officers' experience, training, and judgment,[3] we find that the Terry stop and frisk was justified.

## C.

Works argues that even if the initial Terry stop was justified, Officer Bills exceeded the bounds of Terry by looking into the plastic bag and discovering the cocaine. Works contends that because Combs and Livingston both patted down the bag before it reached Bills and concluded that it did not feel like it contained a weapon, there was no justification for Bills to look into the bag. We disagree. Under the "plain feel" doctrine set forth in Minnesota v. Dickerson, 508 U.S. 366 (1993), an officer may seize contraband other than weapons during a lawful Terry search if the officer "feels an object whose contour or mass makes its identity immediately apparent." Dickerson, 508 U.S. at 375. Surrounding circumstances may inform an officer in making this determination. See United States v. Rogers, 129 F.3d 76, 79 (2nd Cir. 1997)(holding that the officer's "belief [that defendant's pocket contained drugs], combined with [defendant's] evasive and suspicious conduct," allowed the officers to search defendant's pockets for

---

[3] The three officers involved in this case had 37 combined years of field experience. All three had prior experience with drug matters and Combs served as the Drug Unit Commander of the Huntington Police Department.

9

contraband). However, once an officer has determined that the object is not a weapon and its shape or size does not indicate its contraband nature, the search must stop. United States v. Raymond, 152 F.3d 309, 312 (4th Cir. 1998).

This case is similar to United States v. Yamba, 506 F.3d 251 (3rd Cir. 2007). There, the Third Circuit affirmed the denial of a suppression motion where an officer testified that in the course of a lawful Terry patdown, he felt a plastic bag in defendant's pocket containing a "soft, spongy-like substance" later revealed to be marijuana. Yamba, 506 F.3d at 260. The court noted that the officer did not have to be "certain that the object . . . was contraband." Id. Instead, the officer's experience led him to "reasonably suspect" that the plastic bag in the defendant's pocket contained marijuana, and the "plain feel" doctrine justified the seizure. Id.

We have applied the "plain feel" doctrine to affirm the denial of a suppression motion where the police conducted a lawful Terry patdown and felt an object under the defendant's jacket which ultimately contained a crack cookie. Raymond, 152 F.3d at 311. The officer initially thought the item was a weapon, but discovered after removing it from the defendant's waistband that it was a pie tin. We first held that Terry authorized the officer to remove the object because he thought it was a weapon. After the officer discovered that it was a pie

10

tin (and even though there was no indication that the tin was transparent), we found that the incriminating nature of the object was immediately apparent because the officer knew from his training that crack cocaine was often created in a pie tin. Therefore, we found that the seizure fell within the "plain feel" doctrine.

In this case, Officer Livingston testified that when he felt the bag, he could tell that it "wasn't as dense as flour. It was a light, mushy kind of substance . . . a powdery substance." J.A. 50.[4]  Indeed, he immediately surmised that the bag contained contraband based on his training and experience, and in the context of tactily verifying that the plain feel of the substance was inconsistent with what Works represented it to be.  He made this observation as a valid search for drugs took place in the apartment from which Works had just exited. Further, Officer Bills recognized Works from two prior drug and gun cases.  Works attempted to evade the officers and, once detained, repeatedly attempted to conceal the bag.  In light of these circumstances, we find that the seizure of the cocaine was justified by the "plain feel" doctrine.

---

[4] Under the "fellow officer rule," knowledge possessed by one officer is imputed to all officers on the scene.  See Karr v. Smith, 774 F.2d 1029, 1032 (10th Cir. 1985).

11

III

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED